# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEROME P. EVANS, | : | CIVIL NO. 1:CV-12-2385 |
|     Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| OFFICER FANELLI, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

On November 29, 2012, Jerome P. Evans ("Evans"), an inmate currently confined at the Warren County Correctional Center in Belvidere, New Jersey, filed this civil rights action pursuant to 42 U.S.C. § 1983. Named as Defendants in the original complaint are Officer Fanelli and K.P. Reisinger, two employees at the State Correctional Institution at Camp Hill, Pennsylvania, Evans' former place of confinement. Evans proceeds in forma pauperis in this matter.[1] On December 3, 2012, Evans filed an amended complaint in this action. (Doc. No. 5.) Named as Defendants in the amended complaint are Fanelli, Reisinger, the Program Review Committee and "John Doe," the Grievance Coordinator at SCI-Camp Hill. The Court will proceed on the amended complaint. Evans has also filed a motion for the appointment of counsel in this matter. (Doc. No. 7.) Pursuant to 28 U.S.C. § 1915, the Court is required to examine the complaint for legal sufficiency and to dismiss the complaint if it is frivolous, malicious or fails to state a claim on which relief may be granted. For the reasons that follow,

---

[1] Evans completed this Court's form application for leave to proceed in forma pauperis and authorization form. An Administrative Order was thereafter issued on November 29, 2012, (Doc. No. 4), directing the warden at his place of confinement to commence deducting the full filing fee from his prison trust fund account. A second motion to proceed in forma pauperis filed by Evans on January 28, 2013 (Doc. No. 9) will be dismissed as moot.

the motion for counsel will be denied, and the amended complaint will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

**I.      Allegations of the Complaint**

Evans alleges that he was issued a false misconduct by Defendant Fanelli on April 12, 2012, charging him with threatening Fanelli with bodily harm and using obscene language. Evans was placed in the Restricted Housing Unit pending a formal hearing on the misconduct and provided with a form to draft his version of the incident. Evans states that he requested witnesses, including a counselor at SCI-Camp Hill. According to Evans, Fanelli has a reputation for issuing false misconducts.

On April 16, 2012, a formal misconduct hearing was conducted in front of Defendant Reisinger. Evans was found guilty of the charges and sanctioned to ninety (90) days disciplinary segregation. According to Evans, he was not told by Reisinger the reasons for his decision and was not afforded the opportunity to call witnesses. Evans does acknowledge that Reisinger provided a written summary of the hearing and states that he believed the officer's version of the story over Evans' version. Evans filed an appeal from the finding of guilt the same day.

Evan further alleges that on April 19, 2012, he received a receipt for personal property of his that was inventoried with respect to the move to the segregated cell in the RHU. He noticed that almost all of his commissary items were not listed on the form, and that some of his clothing had been destroyed/shredded. He was informed that any items not appearing on the list meant that they were not sent from his former housing unit and that he would have to file a grievance about the matter.

On April 22, 2012, Evans states that he was transferred out of SCI-Camp Hill to SCI-Coal Township, and placed in the segregation unit there. He claims that as of May 23, 2012, he still had not received any response to his appeal from the finding of guilt on the misconduct. On June 12, 2012, Evans wrote a letter addresses to the Program Review Committee at SCI-Camp Hill requesting that the charges be dismissed against him, but received no response.

In the amended complaint he claims that he was illegally placed in segregation and denied procedural due process with respect to the misconduct proceeding that was conducted. He appears to challenge the issuance of a false misconduct, as well as the confiscation/destruction of his personal property. As relief he seeks injunctive and monetary relief.

## II.     Discussion

### A.     Request for the appointment of counsel

Evans requests the appointment of counsel in this action because he is unable to afford an attorney and states that he is greatly limited by his imprisonment. (Doc. No. 7.) He also states that his access to the law library is limited, and that investigation and trial preparation will require the expertise of an attorney. His request for counsel will be denied for the following reasons. Although prisoners have no constitutional or statutory rights to appointment of counsel in a civil case, Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997), district courts have broad discretionary power to appoint counsel under 28 U.S.C. § 1915(e)(1). Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002)(citing Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993)); Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981). The United States Court of Appeals for the Third Circuit has stated that the appointment of counsel for an indigent litigant should be

made when circumstances "indicate the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." Smith-Bey v. Petsock, 741 F.2d 22, 26 (3d Cir. 1984).

The initial determination to be made by the court in evaluating the expenditure of the "precious commodity" of volunteer counsel is whether the plaintiff's case "has some arguable merit in fact and law." Montgomery, 294 F.3d at 499. For the reasons set forth in this Memorandum, it is clear that the claims set forth in amended complaint lack merit and amendment would be futile. However, even if this Court were to assume that this case has arguable merit in law and the facts, other factors to be examined are:

1. The plaintiff's ability to present his or her own case;

2. The difficulty of the particular legal issues;

3. The degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

4. The plaintiff's capacity to retain counsel on his or her own behalf;

5. The extent to which a case is likely to turn on credibility determinations; and

6. Whether the case will require testimony from expert witnesses.

Montgomery, 294 F.3d at 499 (citing Tabron, 6 F.3d at 155-57).

The pending motion fails to set forth any special circumstances or factors that would warrant the appointment of counsel at this time. Tabron, 6 F.3d at 155-56. The pleadings submitted do not contain complicated legal issues. In reviewing the complaint, Evans is obviously literate and able to litigate this action on his own. The complaint clearly sets forth the claims Evans desires to pursue in this matter. While he may not have the ability to visit the law

library as often as he would like, it appears that he does have some access to the library. Further, even if the Court were to find any merit to the claims set forth, any concern about a trial would be premature.

   B.     **Screening of amended complaint**

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis. Section 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) <u>fails to state a claim on which relief may be granted</u>; or (iii) seeks monetary relief against a defendant who is immune from such relief.

(Emphasis added.) Federal Rule of Civil Procedure 12(b)(6) allows a defendant, in response to a complaint, to file a motion to dismiss a claim or claims for "failure to state a claim upon which relief can be granted . . . ." Section 1915(e)(2)(B)(ii) provides this ground for summary dismissal of a complaint (before service) - - failure to state a claim under Rule 12(b)(6) principles. A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. Under Fed. R. Civ. P. 12(b)(6), the court must accept as true the factual allegations in the complaint, and construe any inferences to be drawn from the allegations in Plaintiff's favor. See <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007)(quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)). "The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" <u>Marangos v. Swett</u>, No. 08-4146, 2009 WL 1803264 (3d Cir. June 25, 2009)(citing <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009). In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a

5

complaint must contain enough "facts to state a claim to relief that is plausible on its face" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 570 (2007), and the factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (internal citations omitted); accord Iqbal, 129 S. Ct. at 1953.  The facts plead must offer more "than an unadorned, the defendant-unlawfully-harmed-me accusation." Id., 120 S. Ct. at 1949 (internal quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct at 1949 (citing Twombly, 550 U.S. at 556). Further, a district court should provide leave to amend "when amendment could cure the deficiency and would not be inequitable." Grayson v. Mayview State Hospital, 293 F.3d 103, 106 (3d Cir. 2002).  A complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed without leave to amend.  Id. at 106.

**Issuance of False Misconduct**

The filing of a false misconduct report does not violate an inmate's due process rights. The general rule, as stated in Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986), provides that a "prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."

"The Plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law."  Thus, where a prisoner is provided due process, no constitutional violation results from his being falsely accused of a misconduct.

The Fourteenth Amendment of the United States Constitution provides in pertinent part:

6

"No State shall ... deprive any person of life, liberty, or property, without due process of law...." The Supreme Court has mandated a two-part analysis of a procedural due process claim: (1) "whether the asserted individual interests are encompassed within the ... protection of 'life, liberty or property[,]'" and (2) "if protected interests are implicated, we then must decide what procedures constitute 'due process of law.'" Ingraham v. Wright, 430 U.S. 651, 672, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). If there is no protected liberty or property interest, it is unnecessary to analyze what procedures were followed when an alleged deprivation of an interest occurred. In Wolff v. McDonnell, 418 U.S. 539, 563-73, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), where the plaintiffs were deprived of good time credits as a severe sanction for serious misconduct, the Supreme Court held that such inmates had various procedural due process protections in a prison disciplinary proceeding, including the right to call witnesses and to appear before an impartial decision-maker.[2]

Thereafter, the Court in Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 74 L.Ed.2d

---

[2] In Wolff, the Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556, 94 S.Ct. 2963. Nonetheless, the Supreme Court held that a prisoner facing serious institutional sanctions is entitled to some procedural protection before penalties can be imposed. Id. at 563-71, 94 S.Ct. 2963. The Supreme Court set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. Id.

An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). In that case, the Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

7

675 (1983), stated that a state law which "used language of an unmistakably mandatory character" creates a protected liberty interest. Following <u>Hewitt</u> many courts held that a state regulation can create a due process interest–such as freedom from punitive segregation–if the rule contains mandatory language such as "shall" or "will." <u>E.g</u>., <u>Layton v. Beyer</u>, 953 F.2d 839, 848-49 (3d Cir. 1992).

The Court's decision in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), however, marked a shift in the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. <u>Id</u>. at 481, 115 S.Ct. 2293. In <u>Sandin</u>, the Court was presented with the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to thirty (30) days in disciplinary segregation. <u>Id</u>. at 474-76, 115 S.Ct. 2293. The Court first found that the approach adopted in <u>Hewitt</u>–described above–was unwise and flawed. <u>Id</u>. at 481-84, 103 S.Ct. 864. The Court also rejected plaintiff Conner's argument that "any state action taken for punitive reasons encroaches upon a liberty interest under the Due Process Clause even in the absence of any state regulation." <u>Id</u>. at 484, 103 S.Ct. 864. The Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. <u>Id</u>. at 485, 103 S.Ct. 864. The nature of plaintiff Conner's confinement in disciplinary segregation was found similar to that of inmates in administrative segregation and protective custody at his prison. <u>Id</u>. at 486, 103 S.Ct. 864.

Focusing on the nature of the punishment instead of on the words of any regulation, the <u>Sandin</u> Court held that the procedural protections in <u>Wolff</u> were inapplicable because the "discipline in segregated confinement did not present the type of atypical, significant deprivation

8

in which a state might conceivably create a liberty interest." Id. The Court examined the nature of Conner's disciplinary segregation and found that "[b]ased on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment." Id. In the final holding of the opinion, the Court stated "that neither the Hawaii prison regulation in question, *nor the Due Process Clause itself*, afforded Conner a protected liberty interest that would entitle him to the procedural protections set forth in Wolff." Id at 487, 115 S.Ct. 2293 (emphasis added).[3]

Even if the Wolff requirements were not complied with at the misconduct hearing, Evans' complaint, in light of Sandin, is without merit because Evans does not have a liberty interest in remaining free from disciplinary confinement and the procedural due process protections set forth in Wolff do not apply. Furthermore, there are no allegations that the incidents of disciplinary confinement in the present case are materially different than those the Supreme Court found to be "not atypical" in Sandin, or that they differ appreciably from those of administrative custody.

This Court and others within this circuit, applying Sandin in various actions, have found no merit in procedural due process claims presented regarding short term institutional

---

[3] The Sandin Court relied on three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates inside and outside segregation, the state's action in placing the inmate there did not work a major disruption in the inmate's environment; and (3) the state's action did not inevitably affect the duration of inmate's sentence. Furthermore, the majority in Sandin viewed administrative or protective custody as "not atypical" and within the "ordinary incidents of prison life." 515 U.S. at 484-86, 15 S.Ct. 2293. Specifically, the Court stated that "Conner's confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." Id. at 486, 115 S.Ct. 2293. Consequently, the appropriate point of comparison is between disciplinary segregation and other forms of discretionary segregation, not general population conditions.

9

disciplinary custody placement. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); Smith v. Mensigner, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest). Considering the rules of law set forth in Sandin, this Court finds that Evans' due process claims resulting from his placement in disciplinary segregation are meritless because he had no protected liberty interest in the first place.

Similarly, Evans' allegations that he was issued a falsified misconduct report and that Hearing Examiner Reisinger denied his witnesses and provided an inadequate explanation for the finding of guilt, did not violate his due process rights as his concurrent ninety (90) days in disciplinary confinement does not constitute an "atypical and significant hardship" so as to trigger due process protection. See Sandin, 515 U.S. 472, 115 S.Ct. 2293; Griffin, 112 F.3d 703. Thus, because he was not deprived of a protected liberty interest, Evans' challenge to the issuance of the misconduct charge is only actionable under § 1983 if Defendant Fanelli issued the misconduct in retaliation for Evans' having exercised a constitutional right. See Carter v. McGrady, 292 F.3d 152, 158 (3d Cir. 2002)(citing Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)). There are no allegations of retaliation whatsoever contained in the amended complaint.

To the extent that Evans claims that the Grievance Coodinator and Program Review Committee failed to overturn his misconduct, he fails to show how these individuals were personally involved in the incident that gave rise to the misconduct proceedings. In Rauso v.

Vaughn, 2000 WL 873285 (E.D. Pa. 2000), the plaintiff's claims against a prison official were dismissed for lack of personal involvement because the Court found that the underlying claims regarding the plaintiff's misconducts lacked merit. The Rauso court held there was no evidence that the official participated in the incidents that gave rise to the misconducts, but simply upheld the decision finding that plaintiff violated prison policy. Id. at *16; citing Bey v. Pennsylvania Dept. of Corrections, 98 F.Supp.2d 650 (E.D. Pa. 2000)(dismissing the plaintiff's claims that the defendant superintendent was liable for upholding decisions finding that he plaintiff had violated prison policy because the underlying claim lacked merit). As such, the Grievance Coordinator and PRC members are entitled to dismissal.

**Lost/Destroyed Personal Property**

Evans also alleges that at some point during his move to the segregated housing unit some of his commissary items were either lost or destroyed, including t-shirts and other articles of clothing. A civil rights claim cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state. Parratt v. Taylor, 451 U.S. 527, 543-44 (1981). The United States Supreme Court has extended Parratt to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a civil rights claim is not available. Hudson v. Palmer, 468 U.S. 517, 532-33 (1984). The federal courts in Pennsylvania have recognized that both the DOC internal grievance procedure and the availability of a state tort suit in state court provide adequate post-deprivation remedies so as to satisfy due process requirements under Hudson. See, e.g., Edmonds v. Sobina, 295 F. App'x,

11

214, 217 n.5 (3d Cir. 2008); Austin v. Lehman, 893 F. Supp. 448, 454 (E.D. Pa. 1995); Payton v. Horn, 49 F. Supp. 2d 791, 795 (E.D. Pa. 1999). Consequently, regardless of whether the deprivation of property in the instant case was the result of intentional or negligent conduct, Evans may not obtain relief via a civil rights complaint if he has adequate alternative remedies.

Evans can assert any claim relating to the deprivation of his personal property via the DOC's administrative remedy system. He also may assert a loss of property claim in Pennsylvania state court. Since both of these remedies are available to him, Evans' claim of improper deprivation of property will be dismissed for failure to state a claim. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| JEROME P. EVANS, | : | CIVIL NO. 1:CV-12-2385 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | |
| OFFICER FANELLI, et al., | : | |
| Defendants | : | |

## ORDER

**AND NOW**, this 17th day of June, 2013, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's motion for the appointment of counsel (Doc. 7) is **denied**.

2. The complaint is **dismissed** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

2. The Clerk of Court is directed to **close this case**.

3. Any appeal taken from this order will be deemed frivolous, without probable cause and not taken in good faith.

S/ Yvette Kane
YVETTE KANE, Chief Judge
Middle District of Pennsylvania